

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

| | |
|---|---|
| **JESSE FORKNER,**<br>3718 Bircham Loop<br>Midlothian, Virginia 23113<br><br>    Plaintiff,<br><br>v.<br><br>**THE GOODMAN-GABLE-GOULD COMPANY,**<br>Serve: Registered Agent C. Thomas Brown,<br>10621 Jones Street, Suite 101<br>Fairfax, Virginia 22030<br><br>And<br><br>**ROLLINS ACCOUNTING AND<br>INVENTORY SERVICES, INC.,**<br>Serve: Registered Agent Neil C. Kahn<br>3903 Naylors Lane<br>Pikesville, Maryland 21208<br><br>    **Defendants.** | Case No. 3:16cv617 |

## PETITION FOR DECLARATORY JUDGMENT

Plaintiff Jesse Forkner, by and through his undersigned counsel and pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. § 2201, brings this action for declaratory judgment against Defendants The Goodman-Gable-Gould Company and Rollins Accounting and Inventory Services, Inc. Through this Petition, Plaintiff respectfully requests that the Court enter a judgment declaring that the restrictive covenants contained in his Employment Agreement with the Defendants are void and unenforceable.

## PARTIES & JURISDICTION

1. Jesse Forkner (hereinafter, "Mr. Forkner") is an individual resident of the Commonwealth of Virginia and resides at 3718 Bircham Loop, Midlothian, Virginia 23113.

2. Defendant The Goodman-Gable-Gould Company (hereinafter, "GGG") is a corporation formed under the laws of the state of Maryland with its principal office located at 3903 Naylors Lane, Baltimore, Maryland 21208.

3. Defendant Rollins Accounting and Inventory Services, Inc. (hereinafter, "RAIS") is a corporation formed under the laws of the state of Maryland with its principal office located at 10110 Molecular Drive, Suite 300, Rockville, Maryland 20850.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1332(a) and 2201. There is an actual controversy between Mr. Forkner and GGG. There is also diversity of citizenship between Mr. Forkner, a resident of Virginia, and GGG, a resident of Maryland. The amount in controversy also exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this claim occurred, and will occur, in this judicial district. Mr. Forkner was employed by GGG and RAIS in this judicial district, worked for GGG and RAIS from this judicial district, and is now being precluded from continuing to work in this judicial district.

## FACTS
### Mr. Forkner's Employment With GGG and RAIS

6. GGG and RAIS are related disaster and loss recovery consulting organizations GGG specializes in providing public insurance adjusting services and RAIS provides accounting and inventory services related to insurance claims. Both are subsidiaries of a parent holding company, Molecular Holdings Corp.

2

7. Mr. Forkner began employment with GGG on or about June 4, 2001. On January 1, 2006, Mr. Forkner was transferred to RAIS, thereby terminating his employment with GGG. From the time of his transfer to the present, Mr. Forkner has been employed by RAIS, has rendered all his services for RAIS, and been paid by RAIS.

8. With both GGG and RAIS, Mr. Forkner served in a support role to the public adjusting function. Mr. Forkner, a CPA, is an expert in analyzing and measuring inventory and income loss, which is an essential service for public adjusters who represent policyholders and insureds in advocating settlements with insurance companies on their behalf.

9. Although GGG and RAIS both operate throughout the East Coast of the United States, and, in the event of major catastrophes, nationally, Mr. Forkner's practice as an accountant was limited almost exclusively to Maryland and the District of Columbia, though he exclusively worked out of RAIS's Chesterfield County, Virginia office.

10. The clients whom Mr. Forkner provided support services were drawn from the public at large. In contrast to private insurance adjusters who are employed by an insurance agency to handle all claims of that company's insureds, no such pre-existing relationship exists for public insurance adjusters, who serve as advocates of the insureds as opposed to the insurance company.

11. In performing his services, Mr. Forkner measures losses based on established insurance industry norms and based on specific guidance and definitions in the applicable insurance policy. There was no proprietary method, database, or other procedure specially developed or employed by GGG and RAIS in rendering these services.

12. Due to the nature of the business, Mr. Forkner did not obtain and has not used any information related to his employment that is confidential or proprietary.

3

## Mr. Forkner's Employment Agreement

13. Upon joining GGG, Mr. Forkner entered into an Employment Agreement with GGG (attached hereto as Exhibit A).

14. The Employment Agreement contained a provision entitled "Agreement by Employee Not to Compete with the Company" (hereinafter, "Non-Competition Provision") .

15. The Non-Competition Provision provided:

The Employee agrees that, for a period of three (3) years following the termination of the Employee's employment with the Company, regardless of the reason for the termination, whether caused by resignation or discharge or for any other reason, and regardless of who is at fault, and regardless of any claim that either party may have against the other, the Employee will not, within the Territory (as defined in Section 7), either directly or indirectly, either on his own account or on behalf of any entity whatsoever,

> (1) participate in, engage in, or be connected in any manner with the activities and business of inventory appraisal, analysis or evaluation or of public insurance adjusting;
>
> (2) perform the duties or services of a public insurance adjuster;
>
> (3) solicit public insurance adjusting business; or
>
> (4) otherwise compete with the Company in any manner connected with the business affairs of the company.

16. Paragraph 7 of the Employment Agreement defines "Territory" as "the States of Pennsylvania, Georgia, Maryland, North Carolina, South Carolina, Virginia, West Virginia, Florida, and the District of Columbia."

17. Paragraph 14 of the Employment Agreement provides that the law of the state of Maryland governs the interpretation, validity, and effect of the contract.

18. Mr. Forkner did not sign any employment agreement or any other contract with RAIS. Mr. Forkner's only agreement was with GGG.

### Mr. Forkner's Resignation and Post-Employment Activities

19. After fifteen years of service to GGG and then RAIS, Mr. Forkner resigned on April 13, 2016.

20. Mr. Forkner thereafter entered into business for himself. He obtained a public adjusters license for the first time and began providing public adjusting services in Virginia.

21. Mr. Forkner has continued serving as a public insurance adjuster for the past three months. During that time, Mr. Forkner neither solicited nor accepted business from any past or present customer or client of GGG or RAIS. Instead, as was the case when Mr. Forkner was an employee of GGG and RAIS, Mr. Forkner's clients were drawn from the public at large through Mr. Forkner's own independent research and legwork.

22. On July 11, 2016, Mr. Forkner received a letter from Michael J. Goecke, who advised he was counsel for both RAIS and GGG (attached hereto as Exhibit B).

23. The letter, with a subject line of "Violations of your Employment Agreement," ordered Mr. Forkner to "cease and desist" purported violations of the Non-Competition Provision, which the letter identified as working as a public insurance adjuster and soliciting an unnamed "company client using company references."

24. The letter further stated that "[t]he Company has reviewed the circumstances of the matter, and authorized us to take all steps necessary to enforce the agreement, which may include suing you for monetary damages and injunctive relief." The letter concluded that Mr. Forkner was to respond and confirm that he "will honor and not violation [his] agreement," and that if no response was received, GGG and RAIS would "assume [he does] not intend to honor [his] obligations."

## COUNT I
### Declaratory Judgment – The Non-Competition Provision Has Expired

25. Mr. Forkner re-alleges and incorporates by reference paragraphs 1 through 24 as if set forth fully herein.

26. The Employment Agreement was entered into by and between Mr. Forkner and GGG. RAIS is not and was not a party or beneficiary to the Employment Agreement.

27. The Non-Competition Provision, by its own terms, states that it is only valid for three years following the termination of the Employee's employment with [GGG]." Mr. Forkner's employment with GGG was terminated on January 1, 2016 upon his transfer of employment to RAIS. Therefore, the Provision has expired and is no longer enforceable against Mr. Forkner.

28. GGG maintains that the Non-Competition Agreement is enforceable by them against Mr. Forkner and, further, that perceived violations thereof will be met with immediate litigation.

29. Enforcement of the Non-Competition Provision would cause substantial financial harm to Mr. Forkner, as it would preclude him from continuing to earn compensation at least $100,000 per year, as he has done and expects to do since departing RAIS, for the next three years, thereby blocking Mr. Forkner from income of at least $300,000 during the duration of the Non-Competition Provision.

30. Therefore, there exists an actual controversy of a significant issue between Mr. Forkner and GGG and RAIS within the jurisdiction of this Court involving the rights and liabilities of the parties under a contract, which controversy may be determined by a judgment of this Court.

WHEREFORE, Mr. Forkner respectfully requests that the Court enter an order declaring that the Non-Competition Provision contained in Paragraph 8 of the Employment Agreement is unenforceable against Mr. Forkner by GGG and RAIS.

## COUNT II
### Declaratory Judgment – The Non-Competition Provision Is Unenforceable

31. Mr. Forkner re-alleges and incorporates by reference paragraphs 1 through 24 as if set forth fully herein. By alleging this Count, Mr. Forkner does not waive the right and specifically reserves the right to challenge the validity of any assignment of the Employment Agreement by GGG and to demand strict proof thereof.

32. The restrictive covenants contained in the Non-Competition are unreasonable and overly broad with respect to the activities restricted, geographic area, and duration in that the restrictions are far more than reasonably necessary to protect the interests of GGG or RAIS. Moreover, enforcement of the Non-Competition Provision would impose an undue hardship on Mr. Forkner, and would be contrary to the public interest.

33. The Provision specifically prohibits Mr. Forkner from working as a "public insurance adjuster," soliciting "public insurance adjusting business," participating in, engaging, in, or being "connected in any manner" with "inventory appraisal, analysis, or evaluation or of public insurance adjusting," or otherwise competing with the Company "in any manner connected with the business affairs of the Company." Thus, the Non-Competition Provision prohibits Mr. Forkner from working, at all, as a public insurance adjuster (a position he never held with GGG or RAIS), in any related support position, including not only the position he worked in for the past 15 years but *any* support position, or in any other position, whether related to public adjusting or not, that competes in connection with the business affairs of the company.

The Non-Compete Provision in fact restricts Mr. Forkner from engaging in the foregoing conduct either directly or "indirectly."

34. The Non-Competition Provision is not reasonably restricted in terms of to whom Mr. Forkner may provide the foregoing services (i.e., customers or former customers of GGG and/or RAIS), for whom he may provide the foregoing services (i.e., direct competitors of GGG and/or RAIS), the specific type of services he may provide (i.e., the same services he performed for GGG and/or RAIS), or otherwise tailored to a legitimate or protectable interest of GGG and/or RAIS. Thus, the Non-Competition Provision serves as a deliberate intent by GGG and/or RAIS to place unreasonable and oppressive restraints on Mr. Forkner.

35. Thus, if the Non-Competition Provision were enforced against Mr. Forkner in favor of GGG and/or RAIS, it would serve as a blanket prohibition on Mr. Forkner from working as a public insurance adjuster (a position he never held with GGG, RAIS, or any other company in his career) or any related position, including not only the position he was in with GGG and RAIS, but *any* related position whatsoever. The prohibition is not restricted with respect to whether he performed the specific type of service before or not, covers the expansive designated geographic area (which encompasses numerous states in which Mr. Forkner worked at most once per year) for three years, and applies regardless of the facts or circumstances of how those services are rendered, for whom they are rendered, to whom they are rendered, where Mr. Forkner had previously rendered them, and the impact on GGG's and/or RAIS's business.

36. Enforcement of the Non-Competition Provision would cause substantial financial harm to Mr. Forkner, as it would preclude him from continuing to earn compensation at least $100,000 per year, as he has done and expects to do since departing RAIS, for the next three

years, thereby blocking Mr. Forkner from income of at least $300,000 during the duration of the Non-Competition Provision.

37. The restrictive covenants in the Non-Competition provision cannot be modified to make the covenants reasonable and enforceable.

38. Mr. Forkner maintains that the Non-Competition Agreement is not enforceable against him by GGG or RAIS on the grounds of overbreadth and on the grounds that GGG has no standing to enforce the contract.

39. GGG and RAIS maintain that the Non-Competition Agreement is enforceable by them against Mr. Forkner and, further, that perceived violations thereof will be met with immediate litigation.

40. Therefore, there exists an actual controversy of a significant issue between Mr. Forkner and GGG and RAIS within the jurisdiction of this Court involving the rights and liabilities of the parties under a contract, which controversy may be determined by a judgment of this Court.

WHEREFORE, Mr. Forkner respectfully requests that the Court enter an order declaring that the Non-Competition Provision contained in Paragraph 8 of the Employment Agreement is null, void, and unenforceable against Mr. Forkner by GGG and RAIS.

Respectfully submitted,

*[signature]*

Nicholas H. Hantzes, Va. Bar #23967
Michael Hall, Va. Bar #85481
HANTZES & ASSOCIATES
1749 Old Meadow Rd., Suite 308
McLean, Virginia 22102
Tel: (703) 378-5000
Fax: (703) 448-4434
nhantzes@hantzeslaw.com
mhall@hantzeslaw.com
Counsel for Plaintiff