IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

| | |
|---|---|
| JESSE FORKNER | |
| Plaintiff/Counter-Defendant, | |
| v. | Case No. 3:16-cv-00617-HEH |
| THE GOODMAN-GABLE-GOULD COMPANY, | |
| Defendant, | |
| and | |
| ROLLINS ACCOUNTING AND INVENTORY SERVICES, INC. | |
| Defendant/Counter-Plaintiff. | |

## VERIFIED COUNTERCLAIM
## OF DEFENDANT ROLLINS ACCOUNTING AND INVENTORY SERVICES, INC.

Pursuant to Fed. R. Civ. P. 13, Defendant/Counter-Plaintiff Rollins Accounting and Inventory Services, Inc. ("Rollins"), through undersigned counsel, brings this Counterclaim against Plaintiff Jesse Forkner ("Mr. Forkner").

### JURISDICTION AND VENUE

1. Rollins and Mr. Forkner are citizens of different states.

2. This Counterclaim arises out of the same transaction and occurrence that is the subject of the Complaint brought by Mr. Forkner against Rollins and The Goodman-Gable-Gould Company and does not require adding another party over whom this Court cannot acquire jurisdiction.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Mr. Forkner resides in the County of Chesterfield, located within this district.

## FACTS COMMON TO ALL COUNTS

4. On or about June 4, 2001, for valuable consideration, Mr. Forkner executed an Employment Agreement ("Agreement"), and began working for The Goodman-Gable-Gould Company ("GGG") as an accountant and inventory appraisal analyst. *See* Agreement, attached hereto as **Exhibit A**, at ¶ 1.

5. GGG is engaged in the business of providing expert and unique public insurance adjusting services to persons and entities that have suffered casualty losses compensable under policies of insurance issued by various insurance companies.

6. Mr. Forkner performed accounting services for business income insurance claims, and analyzed and appraised inventory from claims by persons or entities who suffered losses or damages compensable under insurance policies. *See* Ex. A ¶ 2.

7. Over time, Mr. Forkner's responsibilities evolved, and included performing accounting services in connection with business income claims, personal property claims, builders risk claims including hard and soft costs, and loss of rent claims for policy holders. Such services included analyzing, documenting, and assisting with the business income, loss of rents, and other time element claims of persons or entities who have suffered losses or damages compensable under policies of insurance being adjusted by the Company and its affiliates.

8. GGG and Rollins are both wholly owned by Molecular Holdings Corporation.

9. In 2006, Rollins assumed Mr. Forkner's employment, including responsibility for his salary, benefits, and insurance. Rollins is the successor and assign of Mr. Forkner's Agreement. Mr. Forkner's salary, benefits, and terms and conditions of his employment

remained unchanged. Consistent therewith, Mr. Forkner's office location, coworkers, administrative staff, and all other aspects of his employment also remained unchanged. Hereinafter, Rollins and GGG collectively will be referred to as "the Company."

10. Mr. Forkner accepted this assignment, and continued working for the Company until April 2016, when he resigned.

11. During his employment, Mr. Forkner's duties extended beyond the jurisdictions of Maryland, Virginia, and the District of Columbia, to include working on matters in California, Florida, New York, and Texas.

12. Over the course of his employment, Mr. Forkner became knowledgeable about the Company's confidential and proprietary business methods and practices, and the Company's unique methods of assisting its clients, in both the public adjusting and accounting fields. In addition, Mr. Forkner became knowledgeable about the Company's proprietary list of references and customers derived from many decades of business.

13. Section 8(a) of the Agreement prohibits Mr. Forkner from: competing with the Company; soliciting the Company's clients; revealing client information; or divulging Company business practices. It states:

> AGREEMENT BY EMPLOYEE NOT TO COMPETE WITH THE COMPANY
>
> a.  The Company has developed, maintained and used, and it continues to develop, maintain and use, commercially valuable proprietary information which is vital to the success of the Company's business. This information includes, by way of illustration, and without limitation, the names and addresses of the clients of the Company. In addition, the services which the Company has provided its clients have been developed and evolved into a unique process of claims estimation, computation and adjustment, through years of work, with numerous insurance companies and their adjusters.
>
> b.  The Company has kept confidential its list of clients, as well as its unique methods of claims estimation, computation and adjustment, and it has

3

insisted that its employees preserve the confidentiality of such lists and methods. The Employee is employed by the Company in a capacity in which he will become acquainted with all or part of this information. In order to guard the legitimate interest of the Company in the confidentiality of this information, the Employee will be required, as a condition of his employment, to keep confidential any such information to which he may have access during the term of his employment by the Company.

c. The Employee agrees that, for a period of three (3) years following the termination of the Employee's employment with the Company, regardless of the reason for the termination, whether caused by resignation or discharge or for any other reason, and regardless of who is at fault, and regardless of any claim that either party may have against the other, the Employee will not, with the Territory (as defined in Section 7), either directly or indirectly, either on his own account or on behalf of any entity whatsoever,

> (1) participate in, engage in, or be connected in any manner with the activities and business of inventory appraisal, analysis or evaluation or of public insurance adjusting;
>
> (2) perform the duties or services of a public insurance adjuster;
>
> (3) solicit public insurance adjusting business; or
>
> (4) otherwise compete with the Company in any matter connected with the business affairs of the Company.

*See* Ex. A ¶ 8.

14. Within one week of resigning, Mr. Forkner obtained a public adjuster license.

15. In order to obtain a public adjuster license, an applicant must: (1) prepare for, take, and pass an examination; (2) obtain insurance; and (3) obtain a bond.

16. Upon information and belief, Mr. Forkner took these and other actions to obtain his public adjuster license while he was working with the Company.

17. Mr. Forkner's actions show he intended to violate the Agreement while he was working for the Company.

18. Within four (4) months of leaving the Company, Mr. Forkner violated the Agreement in the following ways:

4

      a.      Directly competing with the Company by soliciting at least one potential client of the Company in order to perform public adjusting and accounting services;

      b.      Competing directly against the Company on price for a contract in order to perform public adjusting or accounting services for a potential client; and

      c.      Providing a list of references to a potential client that were not Mr. Forkner's clients, but rather references of the Company.

**COUNT I**
**(BREACH OF CONTRACT)**

19.    The Company incorporates the allegations of paragraphs 1 through 18 of this Counterclaim as though fully set forth herein.

20.    Mr. Forkner entered into a valid and binding Agreement with the Company.

21.    The Agreement prohibits Mr. Forkner from competing with the Company in a defined Territory. Ex. A ¶ 7, 8(c).

22.    Mr. Forkner specifically agreed he would not:

(1) participate in, engage in, or be connected in any manner with the activities and business of inventory appraisal, analysis or evaluation or of public insurance adjusting;

(2) perform the duties or services of a public insurance adjuster;

(3) solicit public insurance adjusting business; or

(4) otherwise compete with the Company in any matter connected with the business affairs of the Company.

Ex. A ¶ 8 (c).

23.    The Agreement also prohibits Mr. Forkner from soliciting the Company's clients. Ex. A ¶ 8 (c)(3).

24.    Mr. Forkner has violated, and continues to violate, the restrictions in the Agreement by, among other things:

      a.      Using his public adjuster license to directly compete with the Company;

5

       b.      Soliciting at least one potential client of the Company in order to perform public adjusting services for that potential client; and

       c.      Using a list of references to a potential client that are not Mr. Forkner's clients, but clients of the Company.

25.    As a direct, proximate and consequential result of the material breaches by Mr. Forkner of his Agreement, the Company has been damaged and continues to be damaged.

WHEREFORE, the Defendant/Counter-Plaintiff, Rollins Accounting and Inventory Services, Inc., requests that judgment be entered in its favor and against the Plaintiff/Counter-Defendant, Jesse Forkner, in an amount to be determined at trial, but in no event less than Seventy-five Thousand Dollars and No Cents ($75,000.00), together with costs and pre-judgment and post-judgment interest, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT II
### (INJUNCTIVE RELIEF)

26.    The Company incorporates the allegations of paragraphs 1 through 25 of this Counterclaim as though fully set forth herein.

27.    Mr. Forkner violated the restrictions contained in his Agreement by:

       a.      Using a public adjuster license to directly compete with the Company;

       b.      Soliciting potential clients of the Company in order to perform public adjusting services for those potential client(s); and

       c.      Providing a list of references to a potential client that are not Mr. Forkner's clients, but clients of the Company.

28.    Paragraph 8(d) of the Agreement allows the Company to obtain a temporary, preliminary, and permanent injunction preventing Mr. Forkner from breaching his promises:

> The Employee acknowledges and agrees that any monetary remedy which the Company may have for any breach by the Employee of any of the provisions of this paragraph will be inadequate and that, in addition to any monetary remedy for such breach, the Company shall be entitled to the issuance of an

6

<u>ex parte</u>, interlocutory and permanent injunction to restrain the Employee from violation of the terms of this paragraph, without the need to demonstrate any likelihood of harm to the Company, whatsoever, that may result from the Employee's breach of this paragraph of this Agreement.

Ex. A ¶ 8(d).

29. The Company has filed a claim for breach of contract, and it likely will succeed on the merits of its claims.

30. Unless Mr. Forkner is enjoined from violating the restrictions contained in his Agreement, the Company will suffer immediate, substantial and irreparable injury.

31. The Agreement is reasonably limited in scope and does not limit Mr. Forkner's ability to find gainful employment. By way of illustration, Mr. Forkner could work as a forensic accountant for an insurance company, work for an independent forensic accounting firm such as MDD Forensic Accountants, HSNO, Meaden & Moore, become an internal accounting officer at a company, or become a Chief Financial Officer of a company. The breadth of job possibilities for Mr. Forkner is not unreasonably limited by precluding his representing policyholders in pursuit of insurance claims.

32. Upon information and belief, Mr. Forkner is self-employed, and an injunction will not preclude him from working or seeking employment.

33. The benefits to the Company in obtaining injunctive relief outweigh any potential harm that Mr. Forkner would incur if this Court grants the requested injunctive relief.

34. The public interest is best served by requiring that employees, particularly employees with intimate knowledge of a company's confidential and proprietary business practices and a special knowledge of its customers – such as that possessed by Mr. Forkner – to honor their agreements, thus preventing the types of damages that have occurred, and will continue to occur, if such violations are permitted to take place.

WHEREFORE, the Plaintiff requests that:

A.   This Court issue an Order granting the Plaintiff a Temporary Restraining Order, a Preliminary Injunction, and a Permanent Injunction to restrain and enjoin Defendant from:

   (1)   participating in, engaging in, or being connected in any manner with the activities and business of inventory appraisal, analysis or evaluation or of public insurance adjusting;

   (2)   performing the duties or services of a public insurance adjuster;

   (3)   soliciting public insurance adjusting business; or

   (4)   otherwise competing with the Company in any matter connected with the business affairs of the Company;

   (5)   for a period of three years after he stopped working for the Company; and

B.   That this Court enter such other and further relief as it deems just and appropriate under the circumstances.

Respectfully submitted,

LERCH EARLY & BREWER, CHARTERED

By: _____/s/ Stuart A. Schwager
   Stuart A. Schwager (VSB #36204)
   3 Bethesda Metro Center, Suite 460
   Bethesda, Maryland 20814
   Telephone: (301) 347-1271
   Facsimile: (301) 347-1521
   saschwager@lerchearly.com

*Counsel for Counterclaim-Plaintiff Rollins Accounting and Inventory Services, Inc.*

## VERIFICATION

I solemnly affirm under penalties of perjury that the contents of the foregoing Verified Counterclaim are true and correct to the best of my information, knowledge, and belief.

ROLLINS ACCOUNTING AND INVENTORY SERVICES, INC.

By: _____
Hayes Walker, III, President

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of August, 2016, the foregoing Counterclaim was electronically filed with the Clerk of the Court using the CM/ECF system, which thereby caused the above to be served electronically on all registered users of the ECF system in this case.

/s/ Stuart A. Schwager
Stuart A. Schwager

9