# EXHIBIT A

# EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** is made and entered as of the 4th day of June, 2001 by and between **THE GOODMAN-GABLE-GOULD COMPANY**, a Maryland corporation, hereinafter referred to as (the "Company"), and **JESSE J. FORKNER**, having an address at 6912 Miami Avenue, Richmond, Virginia 23226 (hereinafter referred to as "the Employee").

**WHEREAS**, the Company is now and, for many years, has been engaged in the business of providing expert and unique public insurance adjusting services to persons who and entities which have suffered casualty losses compensable under policies of insurance issued by various insurance companies; and

**WHEREAS**, the Employee desires to be employed by the Company and the Company desires to employ the Employee on the terms and conditions hereinafter specified in this Agreement.

**NOW, THEREFORE**, in consideration of the covenants and agreements herein contained and of the benefits and advantages flowing from each to the other, the parties hereto do covenant and agree as follows:

1. EMPLOYMENT.

The Employee represents and warrants to the Company that the Employee is free to accept employment hereunder and that the Employee has no prior or other obligations or commitments of any kind to anyone that would in any way hinder or interfere with the Employee's acceptance of, or the full uninhibited and faithful performance of, the Employee's employment hereunder or the best exercise of the Employee's efforts as an employee of the Company.

The Company hereby employs Employee as an accountant and inventory appraisal analyst, and the Employee hereby accepts such employment with the Company, upon the terms and conditions herein set forth. During the term of this Agreement, the Employee shall perform such duties as are set forth in this Agreement and shall devote his entire business time, effort, attention and ability, with undivided loyalty, to the performance of such duties.

2. DUTIES OF EMPLOYEE.

a. <u>Job Assignment</u>. The Employee's duties are generally described as follows: accounting services in regard to business income insurance claims, as well as analyze and appraise inventory from claims of persons or entities who have suffered losses or damages compensable under policies of insurance being adjusted by the Company

b. <u>Additional Duties</u>. The Employee shall perform such additional work as may be required by the Company from time to time under the terms and conditions and according to the directions, instructions and control of the Company.

      c.    <u>Change of Duties</u>. The duties of the Employee may be changed from time to time without having any effect upon any other terms of this Agreement.

      d.    <u>Company's Rules and Regulations</u>. The Employee shall strictly adhere to all of the rules and regulations of the Company which may be established hereafter on a uniform basis to all employees with respect to the conduct of employees. The Employee shall also strictly follow the directions of the Company with respect to the methods to be used in performing his duties.

      e.    <u>Loyalty, Diligence and Faithfulness of the Employee</u>. The Employee agrees that he will loyally, diligently and faithfully fulfill and perform all of the duties and responsibilities assigned to him by the Company. The Employee further agrees that he will not act in any other work capacity or employments without having first obtained the written consent of the Company. It is the Company's intention that the Employee devote all of the Employee's work effort towards the fulfillment of the Employee's obligations under this Agreement.

3.    <u>TERM OF EMPLOYMENT</u>.

The initial term of employment shall be for a period of one (1) year, beginning on the date first written above. This term of employment shall terminate at the end of said one (1) year term, unless terminated sooner by either party as provided in paragraph 10 below, or renewed based upon the mutual agreement of the parties.

4.    <u>BASIC COMPENSATION</u>.

      a.    <u>Salary</u>. The Company shall pay the Employee a salary equal to the sum of Thirty-Five Thousand Dollars ($35,000) per year (the "Base Salary") during the initial one (1) year of this Agreement, unless this Agreement is earlier terminated in accordance with this Agreement. The Base Salary paid pursuant to this Section 4(a) shall be paid weekly, less such sums as may be required to be deducted or withheld under the provisions of any federal, state or local law.

      b.    <u>Compensation Increases</u>. The salary of the Employee may be increased in the sole and unfettered discretion of the Company. Any increase in the Employee's salary shall be deemed an amendment to this paragraph of this Agreement, and shall not have any effect upon any other terms of this Agreement.

      c.    <u>Bonus</u>. Employee shall receive a bonus of One Thousand Dollars ($1,000) after six (6) months of employment and an additional bonus of not less than One Thousand Dollars ($1,000) at the end of one (1) year of employment. Additional or greater bonuses may be paid by the Company as determined in its sole discretion. Applicable withholding will be made from each bonus payment.

      d.    <u>Certified Public Accountant</u>. At such time as the Employee becomes a certified public accountant, the Company will pay a Two Thousand Dollar ($2,000) bonus to the Employee. The cost of a CPA review course and registration fees in connection with the

November, 2001 CPA exam will be reimbursed to the Employee by the Company upon the presentation of adequate documentation of such expenses.

5. OTHER BENEFITS.

a. Medical Insurance. Employee shall be entitled to medical insurance for himself upon the same terms and conditions as the Company offers medical insurance to its other employees who perform duties similar to those performed by the Employee.

b. Life Insurance. The Company agrees to include the Employee in its life insurance plan only if, and only to the extent that, the Company provides life insurance coverage to its other employees who perform duties similar to those performed by the Employee. Any such life insurance will be payable only if the death of the Employee occurs while he is in the employ of the Company. Any such life insurance shall be payable only in accordance with the provisions of and coverages contained in the life insurance policies carried by the Company on the lives of those employees who perform duties similar to those performed by the Employee.

c. Disability Insurance. The Company agrees to include the Employee in its Disability Continuation Insurance Plan, to the extent that coverage is available to the Employee under the provisions of the coverage Plan made available by the Company, from time to time, and to the extent the Company offers such coverage to those employees who perform duties similar to those performed by the Employee. Coverage under this Plan shall become effective after Employee has been employed thirty (30) days by the Company and disability benefits may not be immediately payable under said Plan after a qualifying disability. The Employee should refer to the Plan for additional information with respect to coverage and handling of claims. Employee's coverage under said Plan will cease on the termination of Employee's employment hereunder.

d. Profit Sharing Plan. The Company agrees to include the Employee in the Goodman Gable Gould Company Profit Sharing Plan as determined and allocated in accordance with the provisions of said Plan. The Company agrees that the Employee may participate in a 401(c)(3) plan which may exist from time to time, to the extent such plan exists and participation is offered to other employees who perform duties similar to those performed by the Employee.

e. Employee Expenses. In the event the Employee must incur expenses for entertainment and other related areas in order to properly carry out the Employee's duties under this Contract, the Company agrees to reimburse the Employee for such actual, reasonable, ordinary and necessary expenses that he may incur in the performance of his duties as an employee of, and while acting for the benefit of, the Company. The Company shall require the Employee, in accordance with the requirements of the Internal Revenue Code and Regulations, to account for the actual expenses that he may incur.

f. Vacations. The Employee will be entitled to two (2) weeks vacation per year while this Agreement is in force, during which vacation period Employee will be entitled to receive from the Company the wages and benefits described under paragraph 4 and 5 of this Agreement.

145508

      g.    Other Non-Compensation Benefits. The Company may, in its sole discretion, provide the Employee with such Other non-compensation benefits as may be provided by the Company, from time to time, to the Company's other employees who perform duties similar to those performed by the Employee.

6.    POWER OF THE EMPLOYEE TO BIND COMPANY.

The Employee may not enter into any contract or otherwise bind the Company in any way without written authority from the Company. Any contracts which the Employee enters into without written authorization will not be binding upon the Company. The Employee may not endorse or deposit any checks, drafts or instruments for the payment of money to the Company, either for the benefit of the Company or for the benefit of the Employee, without written authority from the Company.

7.    TERRITORY.

The Employee shall perform the services required under this Employment Agreement in the following territory: the States of Pennsylvania, Georgia, Maryland, North Carolina, South Carolina, Virginia, West Virginia, Florida and the District of Columbia, as may be directed by the Company from time to time. This territory may be changed from time to time by the execution of a supplementary agreement between the Employee and the Company. This territory and any change thereto which may occur after execution of this Agreement by the parties is referred to in this Agreement as "the Territory."

8.    AGREEMENT BY EMPLOYEE NOT TO COMPETE WITH THE COMPANY

      a.    The Company has developed, maintained and used, and it continues to develop, maintain and use, commercially valuable proprietary information which is vital to the success of the Company's business. This information includes, by way of illustration, and without limitation, the names and addresses of the clients of the Company. In addition, the services which the Company has provided its clients have been developed and evolved into a unique process of claims estimation, computation and adjustment, through years of work, with numerous insurance companies and their adjusters.

      b.    The Company has kept confidential its list of clients, as well as its unique methods of claims estimation, computation and adjustment, and it has insisted that its employees preserve the confidentiality of such lists and methods. The Employee is employed by the Company in a capacity in which he will become acquainted with all or part of this information. In order to guard the legitimate interest of the Company in the confidentiality of this information, the Employee will be required, as a condition of his employment, to keep confidential any such information to which he may have access during the term of his employment by the Company.

      c.    The Employee agrees that, for a period of three (3) years following the termination of the Employee's employment with the Company, regardless of the reason for the termination, whether caused by resignation or discharge or for any other reason, and regardless of who is at fault, and regardless of any claim that either party may have against the other, the



Employee will not, within the Territory (as defined in Section 7), either directly or indirectly, either on his own account or on behalf of any entity whatsoever,

   (1) participate in, engage in, or be connected in any manner with the activities and business of inventory appraisal, analysis or evaluation or of public insurance adjusting;

   (2) perform the duties or services of a public insurance adjuster;

   (3) solicit public insurance adjusting business; or

   (4) otherwise compete with the Company in any matter connected with the business affairs of the Company.

  d. The Employee acknowledges and agrees that any monetary remedy which the Company may have for any breach by the Employee of any of the provisions of this paragraph will be inadequate and that, in addition to any monetary remedy for such breach, the Company shall be entitled to the issuance of an ex parte, interlocutory and permanent injunction to restrain the Employee from violation of the terms of this paragraph, without the need to demonstrate any likelihood of harm to the Company, whatsoever, that may result from the Employee's breach of this paragraph of this Agreement.

  e. The parties agree that the provisions of this Section 8 shall specifically survive any termination of this Agreement, for whatever reason.

  9. <u>AGREEMENT BY EMPLOYEE NOT TO DISCLOSE TRADE SECRETS</u>

  a. The Employee agrees that the names of clients are and shall remain the exclusive property of the Company, are confidential and are of great value to the Company. The Employee further agrees that all other information used by the Employee in soliciting clients are trade secrets, are confidential and are the valuable property of the Company, and that any such information developed by the Employee during the course of such employment is and shall remain the exclusive property of the Company.

  b. The Employee recognizes and acknowledges that the expert and unique public adjusting services which the Company performs will be confidential, that the good will of the Company depends, among other things, on keeping such services and information pertaining to such services confidential, and that unauthorized disclosure of such information and services will irreparably harm the Company.

  c. The Employee acknowledges that, prior to his employment by the Company, that he had no knowledge of the formulas, processes, or methods of business operation utilized by the Company. Further, the Employee recognizes and acknowledges that the business matters and affairs of the Company, and the methods of business operations of the Company, including but not limited to, the unique process of claims estimation, computation and adjustment utilized by the Company, are the valuable and confidential trade secrets of the Company,

145508

developed over the years by the Company with the expenditure of large amounts of time, effort and money. The Employee acknowledges and agrees that unauthorized disclosure of such trade secrets will irreparably harm the Company.

       d.     The Employee agrees that during the period of employment by the Company, and during any time thereafter, the Employee will not divulge to any other person or entity the names of any clients of the Company, and he will not disclose to any other person or entity any of the trade secrets which the Company may impart to the Employee, or of which the Employee may otherwise become aware. The Employee also agrees that, upon termination of his employment, regardless of the reason for the termination, whether caused by resignation or discharge or for any other reason, and regardless of who is at fault, and regardless of any claim that either may have against the other, the Employee will deliver to the Company all lists of clients and all other property belonging to the Company or relating to the Company's business. The Employee will treat as confidential any information obtained by the Employee concerning clients of the Company or its business, processes, techniques, methods, systems, plans or policies. During the period of employment and during the three (3) years following the termination of Employee's employment with the Company, the Employee will not disclose such information to any person or entity for any reason or purpose whatsoever, or use such information in any way or in any capacity other than as an Employee of the Company in furtherance of its interest. Upon termination of the Employee's employment by the Company, or sooner, if required by the Company, the Employee will forthwith deliver to the Company any and all literature, documents, data, information, memoranda, correspondence, client and prospective client lists, records and cards acquired by or coming within the knowledge or custody of the Employee, during or in connection with the Employee's term of employment by the Company, and all other materials received by the Employee from the Company or from any of its clients either before, during or after such term of employment by the Company.

       e.     The Employee acknowledges and agrees that any monetary remedy which the Company may have for any breach by the Employee of any of the provisions of this paragraph will be inadequate and that, in addition to any monetary remedy for such breach, the Company shall be entitled to the issuance of an <u>ex parte</u>, interlocutory and permanent injunction to restrain the Employee from violation of the terms of this paragraph, without the need to demonstrate any likelihood of harm to the Company, whatsoever, that may result from the Employee's breach of this paragraph of this Agreement.

       f.     The parties agree that the provisions of this Section 9 shall specifically survive any termination of this Agreement for any reason.

   10.    <u>TERMINATION OF EMPLOYMENT</u>.

       a.     <u>General Provisions</u>. Either party may terminate this Agreement and the employment relationship created thereby, without cause, upon two (2) weeks written notice, or on verbal notice confirmed in writing within such two (2) week period to the other party. Absent any notice of termination and absent any actual termination, this Agreement shall remain in effect and continue upon the same terms and conditions from year to year, unless and until terminated by either party to this Agreement by giving the notice required by this paragraph.

145508

b. <u>Termination for Cause</u>. The Company may immediately terminate this Agreement and the employment relationship created thereby, for "good cause". "Good cause" shall include, but not be limited to, any material violation by Employee of any provision of this Agreement, an act of dishonesty with respect to the Company, insubordination, chronic absence or lateness, a violation of Employee's duty of loyalty, diligence and faithfulness to the Company, chronic addiction to alcohol or drugs, or the commission of any act, misdemeanor, or crime reflecting unfavorably on the Company. Upon termination of employment for "cause", the Company shall pay to the Employee all amounts of Base Salary which accrued to the date of termination of employment. The Company shall have no further obligation to pay any amounts to Employee, including Base Salary or any termination pay.

c. <u>Illness of Employee</u>. If the Employee shall become unable to attend to the duties of employment as required by this Agreement and it becomes necessary for the Company to replace the Employee either temporarily or permanently, the Company may do so and simultaneously suspend all further payments to the Employee for Base Salary, and other compensation, so long as Employee does not violate any other Sections of this Agreement. In such event the Employee may still be entitled to long term disability if such a policy is in effect. The Company will recommence the payment of Base Salary and other compensation to the Employee at such time, if ever, as the Employee may resume the performance of his duties under this Agreement. The right of the Company set forth in this paragraph is in addition to any other right which the Company may have to terminate this Agreement.

d. <u>Death of Employee</u>. If the Employee dies while employed by the Company, the provisions of this Agreement shall have no further force or effect, and this Agreement shall automatically terminate, with the exception of such provisions of this Agreement as may relate to rights to pensions, profit sharing or other Employee benefits, insofar as such rights may be vested by law.

e. <u>Relation to Compensation</u>. If this Agreement is terminated, all compensation and other benefits shall accrue and be paid to the Employee to the date of the termination, except that the Company shall be entitled, upon termination, to set-off any amounts of compensation that may be due the Employee against any amounts of draw which the Employee may then owe the Company. Payment will be made with respect to each item of compensation or benefit as soon as the amount due is determined, except that, in the event of termination of this Agreement for cause, the Company shall have the right to withhold any and all monies due to the Employee and shall apply same as an offset against any monies due to the Company from the Employee as a result of the Employee's misconduct. The Employee agrees to return to the Company forthwith, upon termination, any and all cars, car phones and other such equipment that may have been furnished to him by or for the Company during the Employee's employment by the Company.

11. <u>REMEDIES FOR BREACH OF CONTRACT</u>.

a. The Employee acknowledges and agrees that any monetary remedy which the Company may have for any breach or threatened breach by the Employee of any of the

145508

provisions of this Agreement will be inadequate. Therefore, in the event of the breach or threatened breach of any provision of this Agreement by the Employee, the Company shall be entitled to an <u>ex parte</u>, interlocutory and permanent injunction to enjoin and restrain such breach or threatened breach, without the need to demonstrate any likelihood of harm to the Company whatsoever, that may result from the breach or threatened breach. Such remedies shall be in addition to all other remedies available at law or in equity, including the Company's right to recover from the Employee any and all damages that may be sustained as a result of the Employee's breach or threatened breach of this Agreement.

        b.    In addition to any other remedies the Company may have available to it under the terms of this Agreement, or at law or in equity, the Company shall be entitled to an accounting of any profits which the Employee may have obtained in violation of this Agreement, and the Employee agrees immediately to pay over such profits to the Company upon the Company's demand therefor.

        c.    In the event of any litigation which may arise under this Agreement, including, but not limited to any action by the Company to enforce this Agreement, any and all costs, including attorney's fees and court costs, shall be paid by the party which prevails at judgment.

        d.    The Employee agrees that, in addition to any other Court that may have jurisdiction of the matter, whether resulting from an action arising under Sections 8(d), 9(e), or otherwise, the Circuit Court of Maryland for Baltimore County or Montgomery County, Maryland, as selected by the Company, shall have jurisdiction over any dispute which arises under this Agreement. The Employee hereby consents to the exercise of jurisdiction by the Circuit Court for Baltimore County or Montgomery County, Maryland and to the bringing of an action to enforce the terms of this Agreement in the Circuit Court for Baltimore County or such other Court as may have jurisdiction of the matter.

    12.    <u>INDEMNIFICATION</u>. Employee represents and warrants that he is not subject to any employment or consulting contracts or arrangements that would impair his ability to enter into this Agreement. In furtherance thereof, Employee hereby indemnifies and holds the Company harmless for any loss, damages, liability, claim, suit, costs or expense which may be asserted against, or incurred by, the Company which in any way arise from any employment, contractual undertaking, or similar such business dealing of the Employee with any third party. This indemnification shall include, but be limited to, any claim asserted against the Company for a breach by Employee of a restrictive covenant or covenant not to compete entered into with any other employer or principal, or any claim which arises out of the alleged misappropriation or similar disgorgement by Employee of the trade secrets, confidential information or other corporate property of any third party whatsoever.

    13.    <u>SEVERABILITY</u>.

    If any clause or provision herein shall be adjudged invalid or unenforceable by a court of competent jurisdiction or by operation of any applicable law, it shall not affect the validity of any other clause or provision, which shall remain in full force and effect. Each of the provisions

145508



of this Agreement shall be enforceable independently of any other provision of this Agreement and independently of any other claim or cause of action.

14. GOVERNING LAW.

In the event of any dispute arising under this Agreement, the law of the State of Maryland will govern the interpretation, validity and effect of this Agreement.

15. WAIVER OF BREACH.

The failure of either the Employee or the Company at any time to require the performance of the other of any of the provisions of this Agreement, shall not affect the respective rights of the Employee or the Company to enforce the same, nor shall the waiver by the Employee or the Company of any breach of any provisions of this Agreement on one occasion be construed as a waiver of any succeeding breach or as a waiver or modification of the provisions of the Agreement itself.

16. COMPLETE AGREEMENT.

This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings between the Employee and the Company. This Agreement cannot be modified, changed or altered, except in writing, and such change, modification or alteration be approved in writing by both parties.

17. SUCCESSORS AND ASSIGNS.

a. This Agreement shall inure to the benefit of and be binding upon the Company, its successors and assigns. This Agreement shall inure to the benefit of and be binding upon Employee, his estate, executor and/or his Personal Representative.

b. The Employee shall not be entitled to assign this Agreement, in whole or in part, at any time.

c. At any time during the term of this Agreement, the Company shall have the right to assign this Agreement, together with all of the Company's rights and interests therein, to any firm, corporation, joint venture or other entity. In the event of any such assignment, the Assignee shall acquire all of the rights of the Company under this Agreement and shall be subject to all the Company's obligations under this Agreement. In the event of any such assignment, the Employee agrees to continue his employment by any such Assignee pursuant to and in accordance with the terms, covenants and provisions of this Agreement. The Employee further agrees that, in good faith, he will continue to render the services and perform the duties of his employment fully in behalf of any such Assignee in accordance with and pursuant to this Agreement.

145508

IN WITNESS WHEREOF, the Company and Employee have executed this Agreement on the day and year first above written.

ATTEST:                                THE GOODMAN GABLE GOULD COMPANY

_Eileen R. Heike_                      By: _____ (SEAL)
                                           Neil C. Kahn, Executive Vice President

_Stacy E. Drayer_                          _____
                                           Jesse J. Forkner

[Notary seal: STACEY E. DRAYER, NOTARY PUBLIC, MY COMMISSION EXPIRES 8/31/04, COMMONWEALTH OF VIRGINIA]

145508